UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,                )
        Respondent.                    )
                                       )
                                       )  CA 05-30132-MAP
                                       )  CR 03-30027-MAP
    v.                             )
                                       )
GARY WHITE,                              )
        Petitioner.                    )


**PETITIONER'S RESPONSE TO GOVERNMENT'S MOTION
PURSUANT TO 28 U.S.C. SECTION 2255 TO VACATE,
SET ASIDE OR CORRECT HIS SENTENCE.**


    The government has avoided Mr. White's issues and claims that has merit by concentrating on petitioner's procedural history of the alleged crime instead of addressing the issues Mr. White presented in his 2255 motion. It has been a long tradition of the government to stray away from the issues, disregard petitioner's basic Constitutional claims and the due process clause, at no point did the government addressed the issues brought forward in the petitioner's 2255 as regards the government response. This shows a Consistent pattern how the government has avoided the same issues from the beginning of petitioner previous appeals.

    The government induces a crime, for purposes of the entrapment defense, when it creates a special incentive for the defendant to commit the crime, this incentive can consist of anything that materially alters the balance of risks and rewards bearing on defendant's

decision whether to commit the offense, so as to increase the likelihood that he or she will engage in the particular Criminal Conduct. In their zeal to enforce the law .... Government agent may not originate a Criminal design, implant in an innocent person's mind the disposition to commit a Criminal act, and then induce Commission of the Crime so that the government may prosecute. See Jacobson v. United States 503 U.S. 540, 548, 112 S.Ct 1535, 118 L.Ed. 2d. 174 (1992).

To raise entrapment, defendant need only point to evidence from which a rational jury could find that he was induced to commit the crime but was not otherwise predisposed to do so. See United States v. Staufer, 38 F.3d 1103, 1108 (9th Cir. 1994). "Inducement can be any government conduct creating a substantial risk that an otherwise law-abiding citizen would commit an offense, including persuasion, fraudulent representation, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship." United States v. Davis 36 F.3d 1424, 1430 (9th Cir. 1994). Mr. White argues that he was induced by government agents who used friendship, sympathy and psychological pressure to beguille him into committing crimes which he otherwise would not have attempted. Sherman v. United States, 356 U.S. 369, 376, 78 S.Ct 819, 2 L.Ed 2d 848 (1958).

## STATEMENT OF FACTS

This Case involves the Conviction of the defendant, Gary White, for distribution of Cocaine base on eight dates, December 21, 1999, January 6, 2000, March 17, 2000, March 24, 2000, May 4, 2000, June 2, 2000, July 24, 2000 and August 23, 2000.

The main prosecution witness was Chicopee Police Detective Al Fisher, who while acting in an undercover capacity, purchased the Cocaine from the defendant. On December 7, 1999, a government informant, (Christopher Weeks) Weeks, working for the Chicopee Police Department, introduced undercover detective Fisher (Fisher) to the defendant. This introduction was orchestrated by Weeks and started in motion the events which ultimately lead to the defendant's arrest. The center upon which this Case revolves is the improper inducement of the defendant by the informant Weeks which included repeated and doggedly requesting the defendant to provide him with drugs, threatening the defendant and threatening the defendant's family on numerous occasions.

Detective Fisher testified that he began working with Weeks as a Cooperating informant for the Chicopee Police Department in 1997 (Tr. 9/13/01, 78). Detective Fisher testified that the working relationship with the informant, Weeks, was premised on Weeks providing information regarding drug dealings to detective Fisher. In consideration of Weeks work, detective Fisher would make known to the District Attorney the extent of informant Weeks assistance in that the purpose of making known to the District Attorney was to have informant avoid any jail time (Tr. 9/17/01, 112-113). Detective Fisher also testified that if the informant, weeks was unsuccessful in giving names, and in setting up drug deals, that he would not go to the District Attorney's office on behalf of Mr. Weeks and try to help him with any pending charges (Tr. 9/17/01, 113).

In the Summer of 1999, detective Fisher was summoned to meet the informant, Christopher Weeks, at the jail where Weeks was incarcerated. Weeks told Fisher he had information regarding drug

dealers, but when asked for names, Weeks was unable to provide any (Tr. 9/17/01, 115). Weeks indicated to Fisher that he was working on getting the names. (Tr. 9/17/01, 116). Detective Fisher testified that he gave no instructions for Weeks to follow in obtaining names of drug dealer (Tr. 9/17/01, 117). When Weeks provided the name of the defendant to detective Fisher, no inquiry was made on how Weeks came upon the defendant as a drug dealer (Tr. 9/17/01, 117). Detective Fisher testified in his investigation of the defendant he had no knowledge of whether the defendant had any prior arrest of Convictions for distributing drugs, no knowledge of the methods by Weeks to induce the defendant, or how many times he contacted the defendant, or what he said to the defendant in order to have the defendant meet with him on December 7, 1999. Fisher later learned of defendant's lack of sophistication in drug dealing (Tr. 9/17/01, 135-138).

Detective Fisher testified there was very little negotiation involved, rather he indicate an amount and price (Tr. 9/17/01, 144-145). Each time the defendant indicated he would have to contact some other person to deliver the drugs per Fisher's request. (Tr. 9/17/01, 145). The defendant had no control over either the quantity provided (Tr. 9/17/01, 147), or the quality of the drugs delivered to detective fisher (Tr. 9/17/01, 148). Detective Fisher knew that all the defendant was doing was making a phone call to some other third party who would then deliver the drugs (Tr. 9/17/01, 148). Detective Fisher also testified that at no time did the defendant respond with drugs readily and immediately. On every occasion it was necessary for the defendant to call a drug dealer to satisfy detective Fisher's request (Tr. 9/17/01, (154-155).

## SUMMARY OF THE ARGUMENT

The District Court abused it's discretion when it denied the defendant's pre-trial Motion to dismiss the indictment on grounds or egregious misconduct. The defendant's right to due process was violated when the undercover agent designed the crime from beginning to end, made the initial approach to the defendant, encouraged his interest in participating in the crime, rebuffed their efforts after Mr. White indicated he was not interested and induced him to place orders for drugs on behalf of the undercover detective. (PP. 35-43).

The District court's denial of the defendant's Motion for a new trial is an abuse of discretion where the government failed to provide material discovery to the defendant, thereby causing unfair prejudice and infringe on the defendant's right to properly prepare for trial. (PP. 43-50). The defendant's Constitutional statutory rights to a fair trial were denied when the prosecutor injected his personal opinion into the opening statement (PP. 50-53).

The defendant's Constitutional and statutory rights to a fair and impartial trial were denied by the District Court when it failed to grant a Mistrial after the events of September 11, 2001. The defendant was unfairly prejudiced by the denial of the Mistrial. (PP. 60-62).

The defendant, adopts, by reference, the arguments for a Mistrial set forth in the brief of his Co-defendant, which provide alternative or additional grounds for the reversal of his Convictions. (P. 62).

The initial ideas of drug procurement was that of the government informant with the help of detective Al Fisher, Weeks made a relent- less attempt to get the defendant to acquire a source of drug supplies.

Defendant was not selling any drugs when he met Weeks at Ludlow Jail. Weeks threatened defendant if his demands were not met. Weeks secured defendants cooperation by offering to make all the arrangements and suggested a fail safe code for facilitating the transactions rebuffed by Al Fisher. There was no evidence that defendant made any profit from the drug transactions for himself, there was no evidence of drug activities during or before investigation on defendant.

Defendant was attending College and working during investigation, Mr. White did not demonstrate knowledge or experience in the Criminal activities and investigations. The defendant if left to his own will would never had Committed this Criminal act, there is no concrete evidence to suggest otherwise.

## ARGUMENT

The government informant Christopher Weeks was incarcerated with Mr. White at Ludlow County Jail when he introduced himself to Mr. White, Weeks was driven to the point of obsession by the prospect of substantial monetary reward from his Contingency fee agreement and was clearly motiviated by his pressing financial obligation. During a taped conversation Fisher said he knew Weeks wanted to make lots of money, that he makes him nervous, Mr. white also indicated to Fisher that Weeks made him nervous also.

In his testimony at trial Fisher testified that he told Weeks he would put in a good word for him to the DA if he was able to set up a drug deal, with all of this in mind Weeks targeted Mr. White, made the first approach and tried relentlessly to get defendant to

acquire a source of supply for Fisher. Mr. White refused for months and at no time encouraged the informants efforts, Fisher testified during trial that when he visited Weeks at Ludlow County Jail Weeks told him that he didn't have anyone to set up but he was working on it, this proves that there is truth behind Mr. White's testimony that he did not encourage or even consider Weeks Criminal idea, thus there is no evidence of predisposition at initial contact.

Prior to White's release the informant pointed to Mr. White's Mother address and phone number in the telephone directory and told Mr. White that he knows how to find him. After Mr. White release from Ludlow County Jail he never kept in contact with Mr. Weeks and hope that he would never have to deal with him again, upon Mr. White release from Ludlow County Jail he never kept in contact with Weeks, but Mr. Weeks started calling and harassing White's Mother trying to find Mr. White, White's Mother testified that she told her son that someone kept calling her home repeatedly looking for him, Mr. White feared that Weeks being desperate for money was capable of doing harm to his family and eventually capitulated to Week's siren song.

Mr. White instructed his Mother to give Weeks his home number. Week then planted the Criminal idea into Mr. White and promised that if he didn't help to find a source of supply he would do Mr. White bodily harm. After several attempts of inducement and threats Mr. White agreed to meet with Weeks and Al Fisher. When they arrived at White's house he got into the car to speak with Fisher and Weeks, Mr. White did not have in his possession any drugs, he told Fisher specifically that he did not sell drugs and was just released from jail. Mr White told Fisher that he was a College student and was not interested in any drug activity.

7

At the initial meeting with Mr. White, agent Al Fisher began to rebuff informant Weeks effort of planting the disposition to commit the Criminal act by saying that he needed to acquire some drugs, that if White was to assist him in acquiring a source of supply Mr. White would not get into any trouble for doing so. Fisher and Weeks secured Mr. White Co-operation by suggesting a fail safe Code for facilitating the transaction. Fisher told White he only had to find a source of supply have him come to his house and he would pay for the drugs and leave with it that way Mr. White would not have to take no risk of getting into trouble. These facts clearly show the origin of the Criminal plan and the planting of the disposition also the inducement and coercive tactics of Mr. Fisher.

With the Criminal ideas planted inside the mind of Mr. White, then decided to call someone who might know someone who had the drugs Fisher and weeks wanted. The series of events that follows were all due to these issues which clearly constitutes entrapment. This egregious government conduct doesn't end there, after the transaction Weeks then collected the profit from the sale and kept some of the drugs for himself. Each sale that followed were due to the initial activity of the government agents. After every sale Weeks would go to White's house and collect the profits and tell him he will call him the next time Fisher would be comming by to acquire more drugs from the source of supply. He would also remind White that his co-operation would ensure that no harm would come to him.

FOOT NOTE:

    GRAND JURY PERJURY-

        Agent Schuler reckless disregard of the truth during grand

jury testimony.

Agent Schuler never pulled Mr. White over with undercover agent Fisher to make a positive identification to find fact if Mr. White was actually the real Mr. White he was investigating. Agent Schuler lied to the grand jury and contradicted himself during trial there by committing perjury.

No matter what the defendants past criminal record and present inclination to criminality, or the depths to which he has sunk in the estimation of society, certain police conduct to ensnare Mr. White into further crime is not to be tolerated by any civilized society. 2 L.Ed 848, 857. The function of law enforcement is the prevention of Crime and not the manufacturing of crime. 2 L.Ed 848, 851. The undisputed evidence in White's Case indicates that Weeks initiated the contact and threatened him in order to convince him to do so. Government inducement of the Crime is therefore established as a matter of law.

The prosecution attempted to show disposition with hearsay from an informant that White sold drugs, however it is well established in Court that hearsay may not be introduced as evidence of predisposition. Webster 649 F.2d 346 held that "hearsay evidence is only admissible in an entrapment case under the usual rules relating to hearsay, so that hearsay may not be introduced as evidence of predisposition." 347 Because the evidence was admitted for the impermissible purpose of proving that Webster was predisposed to commit the crime charged, the Court of Appeals rejected the argument that the admission of the evidence was harmless error and reversed the Courts decision. The same should apply with White because the hearsay statements were used for the impermissible purpose of proving

9

that White was predisposed to commit the crime.

The Court should reject any statements made by White during the investigation about his past actions or what he was capable of doing, because they were only statements made from an inexperienced individual who wanted Fisher to believe that he was capable of dealing drugs. Further more none of his statements during investigation were substantiated and does not reflect a willingness to deal in cocaine. The conversations took place only after the government agents devoted considerable time to threatening, planting the disposition, inducing, and urging of the initial transactions. There is an analogy to the principle that a confession can be rendered involuntary by either threat or promises. U.S. v. Evans, 924 F.2d 714, 717. In U.S. v. Fadel, 844 F.2d 1425, the District Court specifically rejected officer Hafen's testimony, finding that any comments made by Fadel about his willingness to start with small quantities and later sell kilos did not reflect a willingness to deal in drugs, but rather the statements of an inexperienced individual who wanted Hafen to believe that he was a drug dealer. The government refused to permit Ms. Sugar the government informant from testifying and Carl Schettler the Co-defendant of Fadel. In dismissing Fadel's indictment the District court placed great emphasis on government failure to offer the testimony of Ms. Sugar relating to her contact with Fadel prior to the May 13th meeting with Hafen.

In U.S. v. Cannon, 88 F.3d 1495 prosecutors reference to African-American as "Bad People" and calling attention to fact that defendants were not locals, gave jury improper and convenient hook

10

on which to hang their verdict and warranted a new trial. During Mr. White's trial the prosecutor made reference to White as a "Drug Dealer" and called attention to the defendants acquaintances accusing them of dealing drugs, showed prejudice at trial and gave jury improper and convenient hook on which to hang their verdict as guilty and this type of prosecutorial misconduct warrants a new trial.

The prosecution had no proof of White being a drug dealer and should never make such a reference because it clouds the jurys judgement. Likewise the testimony of the governments agent about conversations with an informant should not have been allowed to be entered as proof of predisposition. No evidence was presented to suggest that White entered into Criminal activities with a profit motive. to the contrary, the evidence presented has clearly indicated that the profit motive was that of the informer. There was no real evidence that White even made any profit from the transaction, the evidence from the transcript and White's testimony suggest that the informer was the one who collected the profit from the transactions and not Mr. White.

Examination of White's background is devoid of any proof of drug activity prior to being approached by the government agents. This is definetely not a Case of the unwary Criminal but instead a Case of the unwary innocent. An acquittal of all charges is truly warranted in this particular Case. The defendant if left to his own would never have committed these criminal acts, there is no real substantial evidence to suggest otherwise. The prosecution attempted to prove predisposition by entering as evidence a prior

conviction of possession dated back nine years, a possession of firearm and domestic violation. However, none of these can prove that White was predisposed to commit the crimes he is charged of. Sherman, 2 L.Ed 2d 848 held that a nine years old sales conviction and a five years old possession conviction is insufficient to prove predisposition to sell narcotics. where evidence of predisposition comes only after the government has devoted considerable time and effort to persuading the defendant rational jurors could not say beyond a reasonable doubt that defendant possessed the requisite predisposition prior to the government investigation and that it existed independent of the government. Many and vaired approaches to the defendant. Where undercover agents or informers engineer and direct Criminal enterprise from start to finish, due process prevents conviction of even predisposed defendant though government agents may approach, investigate and entice individuals already engage in or contemplating criminal activity. Constitutional Law 257, U.S.C.A. Const. Amend. 14.

In Jacobson, the government conceded inducement based on the fact that the defendant there committed the offense after numerous contacts from the government spanning over two years, during the course of which government agents "wav[ed] the banner of individual rights and disparaged the legitimacy and Constitutionality of sexually explicit materials" Jacobson, 503 U.S. at 552, 112 S.Ct 1535. In doing so, "the government not only excited petitioner's interest in sexually explicit materials banned by law but also exerted substantial pressure on petitioner to obtain and read such material as part of a fight against censorship and infringement of individual rights." Id. Jacobson is consistent with prior Cases such as

12

Sherman, where the government played upon defendant's weakness as a drug user, and Sorrells, where the government agent called upon defendant's loyalty to a fellow war veteran to induce him to commit the offense.

Case like Jacobson, Sherman and Sorrells demonstrate that even very subtle government pressure, if skillfully applied, can amount to inducement. In Jacobson, for example, the government merely advanced the view that the law in question was illegitimate and that, by ordering the prohibited materials, defendant would be joining in "a fight against censorship and the infringement of individual rights." Id. at 552, 112 S.Ct 1535. In Sorrells, the inducement consisted of repeated requests, made in an atmosphere of comradery among veterans. See Sorrells 287 U.S. at 439-41, 53 S.Ct 210. In Sherman, the inducement consisted of establishing a friendly relationship with the defendant, and then playing on his sympathy for the supposed suffering of a fellow drug user. See Sherman 356 U.S. at 371, 78 S.Ct 819. In Hollingsworth, the inducement was nothing more than giving the defendant the idea of committing the crime, coupled with the means to do it. See Hollingsworth, 27 F.3d at 1200-02.

The jury could nevertheless, have found White guilty if it found that he was predisposed to commit the offense. Quite obviously, by the time a defendant actually commits the crime, he will have become disposed to do so. However, the relevant time frame for assessing a defendant's disposition comes before he has any contact with government agents, which is doubtless why it's called predisposition. See Jacobson, 503 U.S. at 549, 112 S.Ct 1535. Despite Jacobson's willingness to commit the offense at the first opportunity

13

offered to him, the Supreme Court held that the government had failed to show predisposition because it has failed to show that he would have been disposed to buy the materials before the government started it's correspondence with him. the fact that he was willing to order illegal materials after he'd been harangued by the government for over two years was not deemed sufficient to show predisposition. Jacobson's decision to order, the Court reasoned, could have been a consequence of the government's inducement.

"When the government's quest for convictions leads to the apprehension of an otherwise law-abiding individual who, if left to his own devices, likely would have never run afoul of the law, the Courts should intervene." Jacobson, 503 U.S. at 553-54 112 S.Ct 1535. So far as this record discloses, White is such a law-abiding individual. Prior to his unfortunate encounter with Weeks, he was on a quest for knowledge attending College, seeking a better and productive life. There is surely enough real crime in our society that it is unnecessary for our law enforcement officials to spend months luring on an obviously unwary and Innocent individual to cross the line into criminality. The judgement of conviction should be reversed on grounds of insufficiency of the evidence and the Case should be remanded with instructions that defendant be released forthwith.

14

## CERTIFICATE OF SERVICE

I Gary White, the undersigned, do hereby certify that I caused to be mailed by placement in the institutional mail box, first class postage prepaid, a true copy of the following: Motion to Reverse Conviction: Writ of Habeas Corpus in pursuant to 28 U.S.C. Section 2255 with attached "Argument," to: U.S. Attorney's Office at 1550 Main Street, Third Floor, Springfield Ma 01103

Dated: 7/19/05

Gary White
Reg. No. 90555-038
P.O. Box 2000
White Deer, PA. 17887